# ORIGINAL

FILED
HARRISBURG, PA

JAN 28 2005

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY FREEMAN,

       Plaintiff,

   -vs-

WILLIAM MARTINEZ, ET AL.,

       Defendants.

CIVIL NO: 3:CV-04-1226

Andrew J. Smyser,
Magistrate Judge

## BRIEF IN SUPPORT OF:
## RULE 56(a) MOTION FOR SUMMARY JUDGMENT

COMES NOW: the Plaintiff and respectfully moves this most Honorable Court, pursuant to Rule 56(a), U.S.C., Federal Rules of Civil Procedure, for an ORDER granting him Summary Judgment in all respects. In support thereto, Plaintiff submits that:

FACTUAL BACKGROUND

1)    After exhausting his administrative remedies (Explicitly with the Defendants) seeking credit for time spent in custody that was: (a) not credited towards service of any term of imprisonment; (b) spent in double punishment; (c) towards his present term of imprisonment under 42 Pa. C.S.A. §9760, or alternatively monetary redress, with no success, Plaintiff initiated the instant Title 42 U.S.C. §1983 complaint seeking damages from the Defendants and by proxy their respective Agencies.

2)    Defendants' admitted that Plaintiff had been held in prison for a period of nine months and 27 days in violation of Plaintiff's Constitutional rights, but argued the complaint was time-barred, and the Defendant's could not be held liable under

a Respondeat Superior theory of liability for the admitted wrong doing of their subordinates.

3) Plaintiff filed timely objections to the Motion to Dismiss, and tendered a generous offer to settle the litigation. Defendants ignored the tender. The offer is now withdrawn.

4) On October 05, 2004, this Honorable Court filed an Order denying the Defendants' Motion To Dismiss. Questions as to the specific dates Plaintiff became aware of the time credit torts committed against him, although denying a statute of limitations defense, it appears the Court sought a more accurate indentification of those dates. Plaintiff's affidavit, and the pleadings below, resolve those questions.

5) On October 24, 2004, Defendants filed an "ANSWER" to the complaint citing nine defenses. Two are new versions of old defenses, and seven assert new defenses. Unfortunately, none have merit.

BASIS TO GRANT PLAINTIFF SUMMARY JUDGMENT

6) Rule 56(a) permits a Court to grant a moving party Summary Judgment when there are no material facts in dispute, and the relevant law entitles the moving party to judgment, Carlson v. Arnot-Ogden Memorial Hospital, 918 F. 2d 411, 413 (3rd Cir. 1990). The rule applies to prisoner-jailer litigations, Kost v. Kozakiewicz, 1 F. 3d 176, 183 (3rd Cir. 1993). The law of this Circuit conforming with the law of the land, Anderson v. Liberty Lobby, 477 U.S. 242; 106 S. Ct. 2505 (1986).

- 2 -

7)   Applying the pratical effects of that principle of
law to the facts in this cause means: (a) if this Honorable Court
rules that   Defendants' defense are without merit as a matter
fact and law; then (b) Plaintiff is entitled to a Summary
Judgment Order.  On that basis we review each of the Defendants'
defenses in seriation.

FIRST & SECOND DEFENSES

8)   The First Defense either admits or denies the allega-
tions in the Complaint. Whether those denials have merit is
addressed in the arguments below. The Second Defense:      The
Complaint fails to state a claim upon which relief may be granted
is foolhardy to say the least.

The allegations in the Complaint, which must be accepted
as true contends he was falsely imprisoned for approximately
nine months, and Defendants given the opportunity to correct
that tort,  acquiesced  to the constitutional misconduct of
thier subordinates.  False imprisonment deprives a person of
his "liberty" which if true generates a §1983 claim upon which
relief may be granted, <u>Martinez v. City of Los Angles</u>, 141 F.
3d 1373, 1380 (9th Cir. 1998 ) (Citizen of United States has
a cognizable §1983 claim if he is "deprived of his liberty after
his jail term ends [cases cited omitted]" <u>id</u>.) <u>Owens v. Okure</u>,
488 U.S. 245; 109 S. Ct. 573, 578 (1989) (Misidentification
leading to false arrest not a cognizable §1983 claim. However,
the continued imprisonment once the mis-identification is known
constitues "false imprisonment" a cognizable §1983 claim.)

Case 3:04-cv-01226-JAS   Document 53   Filed 01/28/05   Page 4 of 20

9)   Since the complaint alleged:      Plaintiff was held in custody "after his jail term ended" on DOC No: DC-5350 from March 22, 2001 to May 01, 2001; and anew as a Parole Violator from May 12, 2002 to November 12, 2002, those periods of false imprisonment give rise to a cognizable §1983 claim for monetary relief upon which this Court may grant relief, Prinz v. Greate Bay Casino Corp., 705 F. 2d 692, 700-701 (3rd Cir. 1983) (Judge Higginbottom's dissent explaining the difference between a claim false imprisonment versus conviction for defiant trespass in a §1983 suit.)

Under the law of the land, and the law of this Circuit, the First and Second defenses must be rejected as a matter of fact and the applicable law. [1]

THE THIRD and SIXTH DEFENSES

10)   The Third Defense: "Defendants have not individually or inconcert with others deprived Plaintiff of any rights, privileges or immunities secured to him by the Constitution or laws of the United States." The Sixth Defense: Plaintiff's "incarceration at all material times has been pursuant to lawful authority."

11)   With respect to the former, it appears to Plaintiff that once the Court rejected the Respondeat Superior defense, the Third Defense is simply another version of that defense, but

---

1.   Likewise the Ninth Defense, which is pure beggary and merits no response, i.e. "Plaintiff is entitled to no relief from answering defendant."

suggesting Plaintiff must prove two supplemental requisites to sustain his Complaint.    The "inconcert" factor, and the depravation of a "[federal right]."

First, the Complaint makes no allegation that Defendants acted "inconcert" with their subordinates to falsely imprison him.  Next, if this Court finds Plaintiff was "deprived of his liberty after his jail term ended" as set forth in Statement (9) above, then Plaintiff has been deprived of a federal right.

12) What the Complaint alleged is that: when Plaintiff sought administrative relief from the periods of false imprison-ment, and failing in the two lower tiers of administrative review, Plaintiff sought relief from the Defendants, Exhibit L, with a copy of the Complaint attached, these Respected Secretaries, having the authority, and duly obligated to correct this manifest injustice, played the ostrich rule, and acquiseced to the intentional misconduct of their staff below.

13) In this case, the ostrich role may prove to be costly. As explained by 12 judges of this Circuit "a supervisor may be personally liable under §1983 if he or she participated in violating the Plaintiff's rights, directed others to violate them, or <u>as the person in charge, had knowledge of and acquiesced in his subordinates' violations</u>." <u>Rode v. Dellar-ciprete</u>, 845 F. 2d 1195 (3rd Cir. 1988); <u>Hall v. Pa. State Police</u>, 570 F. 2d 86, 89 (3rd Cir. 1978); <u>A.M. v. Luzerne Juv. Detn. Center</u>, 372 F. 3d 572, 586 (3rd Cir. 2004), <u>Smith v. Mensinger</u>, 293 F. 3d 642, 650-51 (3rd Cir. 2004).

This lays to rest any ambitions Defendants sought refuge in thier Third Defense. Should they wish to persue it, they are free to petition the Third Circuit for a rehearing in those opinions.

14) That Plaintiff's "incarceration at all material times has been pursuant to lawful authority" (Sixth Defense) is contridicted from the mouth of the Defendant, that is "Your maximum sentence expired, 03/22/2001" Exhibit E attached to the Complaint, Parole Board Green Sheet; Exhibit C, DOC sentence status summary computation after initial parole revocation. 2.

Since the record made (Fn. 2) belies the Sixth Defense, the onus is upon Defendants to support this boiler plate allegation with facts that prove the following: Defendant's incarceration from March 22; 2001 to May 01, 2001; (39 days) and from May 12, 2002 to November 12, 2002 (5 months and 29 days) under DOC No: DC-5350 was pursuant to the three year term imposed by Judge Rayford Means on October 17, 1996, on CP #0983/0796, as noted in Exhibit A, Complaint.

It will not suffice to made the boiler plate affirmative defense that Plaintiff's incarceration was at all times pursuant to "lawful authority" rather, "every defense in law or fact

---

2.    Exhibit C, of the Complaint reveals the following data:

| | |
|---|---|
| Date Sentenced: 10-17-96 | Date paroled 11-13-97 |
| | Time served  1 yr., 2 mos. 1 day. |
| Parole revoked  5-23-99 | Sen. comple. 3=22-2001 |
| | Time served 1 yr. 9 mos. 29 days. |
| | Total        2 yrs. 11 mos 30 days. |

As of March 22, 2001, Plaintiff served the full three year sentence under DC-5350.

... shall be asserted in the responsive pleading" Rule 12(b) F.R. Civil Procedure. As the statute makes clear, if the good Defendants have evidence that Plaintiff's incarceration for the time periods at issue was "in fact" pursuant to lawful authority, they were obligated to produce that documentation in their Rule 12(b) motion to dismiss, not in a second bite out of the apple.

Since no Court is blessed with clairvoyent powers, Defendants cannot expect this Court to rule in the abstract that documentation exists to moot the Complaint. [3.]

15) Two points of contention need clairification:

a) Plaintiff's generic term "false imprisonment" is meant to include: The 39 days spent in prison after his 3 year term on DC-5350 ended from March 22, 2001 to May 01, 2001; and the 5 months, 29 days spent as double punishment on DC-5350 from May 12, 2002 to November 12, 2002.

c) Plaintiff does not content his detention as a pre-trial detainee from July 12, 1996, to September 16, 1996, was unlawful. Rather, when discovered he was not credited with those 60 days on DC-5350. Denying credit for that term against his present 5 year term (FH-2868) violated 42 Pa. C.S.A. §9760, and his Equal Protection rights.

3.   Plaintiff's discovery motion seeks production of these mysterious DOC records. Compelling their production will assist the Court in bringing this cause to a just closure.

If these records exist, and are produced, Plaintiff reserves the right to challange their validity, and if necessary amend this motion.

FOURTH and FIFTH DEFENSES

16) Defendants are entitled to a "good faith" defense and enjoy "sovereign and statutory immunity" under Pa. law from damages.  Unfortunately, they are wrong.

17) A good faith defense means Defendants "acted with a reasonable belief in the validity of their actions ... [and] he must convince the trier of the facts that he acted in good faith" Bivens v. Six Narcotic Agents [], 456 F. 2d 1339, 1341, 1348 (2nd Cir. 1972), on remand from Bivens v. Six Narcotic Agents [], 403 U.S. 388; 91 S. Ct. 1999 (1972).

The gravamen of this defense is that Defendants failed to act, rather they played the ostrich role when given the statutory obligation to correct the Constitutional false imprisonment torts inflicted upon Plaintiff by their subordinates.

See Exhibit L Complaint.  Thus, the good faith defense which is a jury question, was waived by the Defendants.

18) Next, neither a good faith or qualified immunity defense is available "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" Harlow v. Fitzgerald, 457 U.S. 800, 817-18; 102 S. Ct. 2727, 2738 (1982); Hafer v. Melo, 502 U.S. 21, 29-30; 112 S. Ct. 358, 364 (1991).

Since false imprisonment, or double punishment is a Constitutional tort, under §1983 concepts of tort liability, neither a good faith or qualified immunity defense relieves these Defendants from suit or damages.

19)  The same analogy applies under Pennsylvania law, 42
Pa. C.S.A. § 8550, Owens v. Shanon, 808 A. 2d 607, 610 (Pa.
Comwlth. 2002); accord Kuzel v. Krause, 658 A. 2d 856, 860
(Cmwlth. 1995) citing from Renk v. City of Pittsburgh, 641 A.
2d 289 (Pa. 1994), and extends to preclude sovereign immunity:

> "More significantly, given the present fact scenario,
> the trial court's reliance upon sovereign immunity is
> misplaced ... [Officers] Henily and his brother were
> charged with violating Heinly's constitutional rights
> by "intentionally, willfully, knowingly and recklessly
> ' firing gunshots into the house when they knew Heinly
> was inside attempting to talk his brother into surren-
> dering. Although the officers conceded they had no
> immunity from personal liability under Section 1983
> because of the United States Supreme Court's decision
> in Hafer v. Melo [...] they still asserted that any
> such 1983 action was barred by the Sovereign Immunity
> Act. This Court found otherwise and stated ...."
>
> (710 A. 2d 1238)

Thus, neither a good faith defense, nor qualified or
sovereign immunity will bar personal liability for the
violation of a known Constitutional right.

20)  The same principle of law applies to the EIGHTH DEFENSE
which re-asserts the Respondeat Superior defense in another
fashion, i.e. Plaintiff's harm was the proximate result of
actions or inactions by persons other than Defendants, Berrs-
Capital v. Whetzel, 256 F. 3d 120, 125 (3rd Cir. 2001) (Prison
official "must actually have known or been aware of the"
misconduct of his subordinates and took no action
to remedy the problem, Id at 125), citing from Farmer v. Brennan
511 U.S. 825, 834; 114 S. Ct. 1970, 1977 (1994 )("The official
knows of and disregards" the unconstitutional misconduct of
his prison staff below.).

SEVENTH DEFENSE

21) Defendants plead the statute of limitations bars all the claims of false or double, or uncredited terms of imprisonment. [4.] This Court's October 05, 2004, ORDER sought clairification of when Plaintiff became aware that: (a) he was held in custody after his jail term ended from March 22, 2001, to May 01, 2001 (39 days); and (b) not credited for the 60 days spent in pretrial custody from July 15-16, 1996 to date sentenced, September 17, 1996. Thus, the question turns to when Plaintiff became aware of the tort, and the accrual of the statute of limitations.

22) Under Pa. law "the true test in determining when a cause action arises or accrues is to establish the time when the plaintiff could first have maintained the action to a successful conclusion" Kapil v. Association of Pennsylvania State Colleges And University Facilities, 470 A. 2d 482, 483 (Pa. 1983) (Kapil).

The leading authority under Pa. law, Leedom v. Spano, 647 A. 2d 221, 226 (Pa. Super. 1994); Casner v. Fed. Of State Municipa Employees, 658 A. 2d 865, 871 (Cmwlth. 1995); Stonehouse v. City of Pittsburgh, 675 A. 2d 1306, 1308 (Cmwlth. 1996); McCauley v. Owens-Corning Fiber Glass Corp., 715 A. 2d 1125, 1127 (Super. 1998), likewise in this Circuit, Reitz v. County of Bucks, 125 F. 3d 139, 144 (3rd Cir. 1997).

4. The October 5, 2004, ORDER held the Complaint was timely with respect to the double punishment period (5-12-2001 to 11-12-2001) because up to the Parole Board's issuance of a final Green Sheet on June 18, 2001, the Board may have accepted Plaintiff's argument that he served the 3 year term on No: DC-5350 in toto, and that period of time would be credited to his new $2\frac{1}{2}$ to 5 year firearm conviction. Thus, Plaintiff was not harmed until June 18, 2001.

We match the facts below against the <u>Kapil</u> requisites.

23) After receipt of the Parole Board's (Board) Green Sheet (GS) on June 18, 2002 ordering Plaintiff to serve 5 months and 28 days of double punishment, he initiated dual appeals with the Board and the DOC. Spread over the appeal process the Board and the DOC provided him with 13 GS and 7 Sentence Status Computation (SSC) Sheets. These documents from the mouth of the Defendants identify the crucial date "when Plaintiff could first have maintained the action to a successful conclusion" <u>Kapil at 483</u>, regarding the 39 days of false imprisonment and the non-accountability of the 60 days as a pretrial detainee.

The 39 Day False Imprisonment Exposure.

24) On July 16, 2002, Plaintiff was provided with a three page SSC sheet. On page three, appearing for the first time a "PRIOR DOC NUMBER [of] EQ5416." See attached <u>Exhibit M.</u>

Six months later on March 28, 2003, the DOC provided another SSC sheet. Page 2 Ids.  for the second time "PRIOR DOC NUMBER EQ5416 [and] DC5350" along with his new firearm No: FH2868. See attached <u>Exhibit N</u>.

25) Since prison numbers are issue in alfa-numeric chronological order to new prisoners, Plaintiff was advised that the only logical conclusion one could reach with the multiple appearance of a "PRIOR DOC NUMBER EQ5416" was that on March 22, 2001, the DOC issued him a new number of EQ5416 to account for his presence in the DOC until release to New Jersey authorities.

26) Exhibits M and N were never provided to Plaintiff back on March 22, 2001. Rather they were intentionally witheld lest the DOC expose its false imprisonment misconduct.[5.]

27) With respect to the statute of limitations, giving Defendants a best case scenario, the accrual date would be July 16, 2002 upon receipt of Exhibit M. Well within the two year limitations period, since the Complaint was filed on May 28, 2004.

However, since Defendant played the game of "Fraudulent Concealment ... the time within which such an action or proceeding ... on account of fraud must be commenced, shall be computed from the discovery of the fraud" 42 Pa. C.S.A. §5532(c). That date is March 03, 2003 upon receipt of Exhibit N, matching the appearance of the mysterious No: EQ-5416 with his two other "PRIOR DOC NUMBERS."

The Uncredited 60 Day Pretrial Confinement.

28) On July 17, 2002 (Same date Exhibit M was received) the Plaintiff received a SSC sheet. On Page 2 the DOC alleges that Plaintiff received a pretrial detainee "Commitment Credit [from] 07/1996: 09/12/1996 to 10/17/1996." See attached Exhibit O.

Interpreteting these figures it appears Plaintiff spent

_____ 5. With the passing of March 22, 2001, and no release to New Jersey authorities, DOC Staff advised he was being temporarily detained pursuant to a New Jersey Governor's warrant. A subsequent complaint to the Camp Hill Superintendant prompted his release. See Plaintiff's affidavit (Exhibit P attached) in support of this Summary Judgment motion outlining other attempted remedies sought to obtain custody credit for the time periods at issue in this action.

108 days as a pretrial detainee.   The Complaint cites a 60 day
period from July 12, 1996, through September 12, 1996.

29)  The DOC's computation is correct in part and incorrect
in part.   The computation in fn. 6 ante is correct. We re-cap
those figures, and clairify the discrepancies.

|  | Year | Month | Day |
|---|---|---|---|
| Initial Parole: | 97 | 11 | 13 |
| Time credit commemcement | 96 | 9 | 12 |
| Time served | 1 yr. | 2 mo. | 1 day |
| Date sentence completed | 01 | 3 | 22 |
| Date sentence revoked | 99 | 5 | 23 |
| Time served | 1 yr. | 9 mo. | 29 days. |
| Total | 2 yrs. | 11 mos. | 30 days. |

30)  The DOC computed the sentence from the date Plaintiff
pled guilty, September 12, 1996, but omitted the time period
from arrest July 12, 1996, to the plea date, September 12, 1996,
which computes to 60 days.

Obviously Plaintiff did not appear before the Court to
enter a guilty plea on the day he was arrested. Enter the "7/1996 "
date on the SSC sheet, Exhibit O.   Date of arrest.

31)  The limitations period to file a §1983 suit on this claim
would have expired two years after completion of the sentence  on
March 21, 2003.   Since the Complaint was filed on May 28,
2004 (Mail box rule), it appears that portions of the Complaint
is time-barred.

32)  Not so.  One; the fraud provisions in 42 Pa. C.S.A.
§5532(c) excuse the alleged time bar, and Two; the Pennsylvania
Supreme Court's recent opinion in Martin v. Pa. Bd. of Pro.
and Parole, 840 A. 2d 299 (Dec. 30, 2003) controls the accrual

dates at issue here. The fraudulent concealment exception was explained above. Simply put, absent the Board's order compelling Plaintiff to serve 5 months 28 days in double punishment, Exhibit O, would have remained burried in DOC files. But fate took a different turn, and Exhibit O emerged on July 17, 2002. Since the Complaint was filed on May 28, 2004, the accural date of July 17, 2002 controlls because at that time Plaintiff "could first have maintained the action to a successful conclusion" Kapil at 483. 6.

33)   The Third Circuit held likewise in, Debiec v. Cabot Corp., 352 F. 3d 117 (2003) adopting the rationale of a dozen Pa. Court opinions on whether personal injury actions of lung damage due to exposure of berylium emmissions from defendant's plant entitled to latent discovery exception to statute of limitations defense:

> In sum, the statutory time period begins to run in latent disease cases at the moment at which plaintiffs possessed 'sufficient critical facts to put [them] on notice that a wrong has been committed and that [they] need investigate to determine whether [they were] entitled to redress [cases cited omitted] Id at 129

The latent disease lies in Defendants' records office and infected Plaintiff. Fortunately, he investigated and discovered its cause on July 17, 2002. One final epithet needs mentioning:

---

6.   Plaintiff made the mistake of placing his trust regarding the computation of his sentence credits to the good DOC Staff. The paralegal who recently assisted him knew better. Sentencing credit miscalulations run rampart in the Pa. DOC.
        The computation torts emerged when the paralegal inquired: (a) How could Plaintiff assert he was transferred to New Jersey upon completion of the DC-5350 term, when the Board's documents identify March 22, 2001, as the expiration of that term.
        (b) How could Plaintiff be arrested, plead guilty before a Judge, and be sentenced on the same day. Where was the pre plea detainee time credits.

34)  In Martin the Pa. Supreme Court resolved the questions
of: (a) When a parolee is unable to post bail on new charges and
the Board lodged a detainer against him/her, and the application
of the over-lapping jail time credits, when the time spent
pretrial, exceeds the newly imposed sentence; and (b) the applica-
tion of jail time credits to pretrial detainees.

The particulars of the opinion is too lengthly to recant
here. It is important to note that Martin over-ruled nine prior
Commonwealth Court opinions addressing these questions, and held:

>"Our decision in the instant matter does create a
'penal checking account.' It merely provides for
the allocation of all periods of confinement: (1)
where confinement is the result of both a Board
warrant and pending charges; (2) where there is no
period of incarceration imposed [on new charges];
(3) where the charges are nolle prossed; (4) or
the parolee is acquitted. Accordingly, we hold that
the indigency of a detainee in failing to satisfy
the requirements for bail is not determinative as to
whether the offender receives credit for the time
served.  6. ..."

>Were Appellant here to serve the full term of his
sentence, he would be imprisoned for one year, one
month, and nineteen days in excess of that of an
individual similarly situated who was able to post
bail.  Such a disparity can have no conceivable
penological justification."

>Fn. 6. We further hold that the indigency of a
detainee in failing to satisfy the requirements for
bail is not determinative as to whether the offender
receives credit for time served.   Id at 309.

The Martin opinion lays to rest any far fetched limitation
defenses. It was filed on December 30, 2003, the accrual date
generating new law that "all periods of confinement" must be
credited to the violator term or the underlying new sentence
including detainee custody credits. Here defendants did neither.
They put their heads in the sand when requested to do so.

35) Since the Complaint was filed 5 months later, this Court may reject the statute of limitations defense, and likewise any notions of sovereign, absolute, or qualified immunity defenses, Reitz v. County of Bucks, 125 F. 3d 139 (3rd Cir 1997).

36) Defense counsel has put up the good fight. However, he was dealt a losing hand from the onset. Its time for Summary Judgment.

WHEREFORE: in light of the facts and controlling law set as set forth above, Plaintiff respectfully moves this Honorable Court to grant him Summary Judgment in all respects, and ORDER the Defendants to compensate him in the amount of $500.oo per each day Plaintiff was falsely imprisoned, served as double punishment, and served as uncredited jail time as a pretrial detainee.

As the prevailing party, Plaintiff moves for an ORDER to compensate him for all costs in initiating, processing, and the maintenance of this action, including reasonable paralegal fees.

Respectfully submitted,

Anthony Freeman FH2868
SCI Camp Hill
P.O. Box 200
Camp Hill, Pa. 17001-0200

## 4. DETAINERS

| Number | Date | From | Indict-Warrant Nos. | OTN | Type |
|--------|------|------|--------------------|-----|------|
| 2 | 01/09/2002 | CAMDEN CTY- NJ | 99-03-008921 | | Out of State |
| | VIOLATION OF PROBATION (RSP, ELUDING LEO- FAIL TO STOP) | | | | |

| Detainer Remarks | | |
|------------------|--|--|
| Detainer # | Date Deleted | Remarks  (for those deleted since last DCT6) |
| None | | |

## 5. PRIOR DOC NUMBERS

| EQ5416 | | | | | | | |
|--------|--|--|--|--|--|--|--|

## 6. FINES, COSTS AND RESTITUTION AT TIME OF RECEPTION

| Date | County | Indictment | Fines | Costs | Restitution |
|------|--------|-----------|-------|-------|-------------|
| 10/17/1996 | PHILADELPHIA | CP#0983/0796 | NOT SPECIFIED | 191.00 | 125.00 |

## 7. ACTIONS: BOARD OF PARDONS

| Decision Date | File Number | Action | Comments |
|---------------|-------------|--------|----------|
| | | | |

Last Modified by: rvolciak

EXHIBIT   M

## 4. DETAINERS

| Number | Date | From | Indict-Warrant Nos. | OTN | Type |
|---|---|---|---|---|---|
| 2 | 01/09/2002 | CAMDEN CTY- NJ | 99-03-008921 | | Out of State |
| ▓▓▓▓ | VIOLATION OF PROBATION (RSP, ELUDING LEO- FAIL TO STOP) | | | | |

| Detainer Remarks | | |
|---|---|---|
| Detainer # | Date Deleted | Remarks     (for those deleted since last DC16E) |
| 1 | 05/30/2001 | SENTENCED |

## 5. PRIOR DOC NUMBERS

| EQ5416 | DC5350 | | | | | | | |
|---|---|---|---|---|---|---|---|---|

## 6.   FINES, COSTS AND RESTITUTION AT TIME OF RECEPTION

| Date | County | Indictment | Fines | Costs | Restitution |
|---|---|---|---|---|---|
| 03/06/2003 | PHILADELPHIA | CP#0132 (CT. 1)/0802 | NOT SPECIFIED | 233.50 | NOT SPECIFIED |
| 03/06/2003 | PHILADELPHIA | CP#0132 (CT. 7)/0802 | NOT SPECIFIED | NOT SPECIFIED | NOT SPECIFIED |
| 03/06/2003 | PHILADELPHIA | CP#0132 (CT. 9)/0802 | NOT SPECIFIED | NOT SPECIFIED | NOT SPECIFIED |
| 03/06/2003 | PHILADELPHIA | CP#0132 (CT. 11)/0802 | NOT SPECIFIED | NOT SPECIFIED | NOT SPECIFIED |

## 7.   ACTIONS: BOARD OF PARDONS

| Decision Date | File Number | Action | Comments |
|---|---|---|---|
| | | | |

Last Modified by:  rvolciak

EXHIBIT   N

## 3. SENTENCE STRUCTURE

**Commitment Credit**
CP#0983;07/1996: 09/12/1996 TO 10/17/1996

| Item | Computation 1 | Computation 2 | Computation 3 | Computation 4 |
|---|---|---|---|---|
| Indictments Included | CP#0983/0796 | CP#0983/0796 | CP#0983/0796 | |
| Effective Date | 09/12/1996 | 09/12/1996 | 09/12/1996 | |
| Expiration of Minimum | 09/12/1997 | 09/12/1997 | 09/12/1997 | |
| Expiration of Maximum | 09/12/1999 | 09/12/1999 | 09/12/1999 | |
| Custody for Return – PV | | 05/23/1999 | 04/25/2002 | |
| Delinquent Time | | | | |
| Backtime Credit | | | 0Y4M15D | |
| Backtime Owed | | 1Y9M29D | 1Y5M27D | |
| New Maximum – PV | | 03/22/2001 | 10/22/2003 | |
| Sentence Computation Date | 11/07/1996 | 03/31/2000 | 07/10/2002 | |
| Basis for Computation | Initial | TCV | TCV | |
| Total Sentence | 1Y-3Y | 1Y-3Y | 1Y-3Y | |
| Status | Inactive | Inactive | Active | |

EXHIBIT   O

CERTIFICATE OF SERVICE

The undersigned, Anthony Freeman, hereby certifies that:

On this _26_ day of January, 2004, he forwarded via First Class Mail, a true and correct copy of the foregoing motion for summary judgment to:

Gregory R. Neuhauser,
Senior Deputy Attorney General
15th Floor
Strawberry Square
Harrisburg, Pa.  17120

Anthony Freeman
Anthony Freeman